IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| WESTPORT INSURANCE CORPORATION, ) ) ) Plaintiff ) ) v. ) ) GUIDEONE MUTUAL INSURANCE COMPANY, ) ) ) Defendant/Third-Party Plaintiff ) ) v. ) ) AL SHANK, et al., ) ) Third-Party Defendants. ) ) | Case No. 15-2001-CM |

**MEMORANDUM AND ORDER**

Plaintiff Westport Insurance Company ("Westport") brings this action to recover payment from defendant GuideOne Mutual Insurance Company ("GuideOne") that Westport made on behalf of third-party defendants Al Shank Insurance, Al Shank, and Sandra Edgerly (collectively, "Al Shank") to Grace Evangelical Lutheran Church ("the church"). GuideOne filed a motion to dismiss Westport's equitable claims. (Doc. 91.) Al Shank filed a motion to dismiss GuideOne's third-party complaint. (Doc. 93.) For the reasons stated below, GuideOne's motion is granted in part and denied in part. Al Shank's motion is granted.

**I.   Factual Background**

Al Shank is an agency that issued insurance policies written by GuideOne to various religious institutions, including the church. On May 30, 2013, Al Shank submitted information through GuideOne's website in regard to the church's risk. GuideOne authorized Al Shank to quote prices for

-1-

different types of coverage for the church. Westport claims that additional information was later exchanged with GuideOne, and coverage for the church was bound by Al Shank on August 19, 2013, and confirmed by email on August 22, 2013.

The church suffered a water damage loss in early 2014, and submitted a claim to GuideOne. But GuideOne denied the church's claim, stating that no policy was issued because its application procedures were not followed.

Westport—liability carrier for Al Shank—stepped in and involuntarily paid the water loss to the church pursuant to *Gilbert v. Mutual Ben. Health & Accident Ass'n*, 241 P.2d 768 (Kan. 1952). Westport filed this action as assignee to the church and subrogee to Al Shank. Westport seeks equitable reimbursement or contribution from GuideOne for Westport's payment of around $165,000 to the church.

## II.     Legal Standards

Both GuideOne and Al Shank filed answers prior to filing their motions to dismiss. (Docs. 84 and 86.) Technically, it is impermissible under the Federal Rules to submit an answer and thereafter file a Rule 12(b)(6) motion to dismiss. *See* Fed. R. Civ. P. 12(b) (stating that a motion to dismiss under the rule "shall be made before pleading if further pleading is permitted"). However, because Rule 12(h)(2) permits the court to consider "[a] defense of failure to state a claim upon which relief can be granted" within a Rule 12(c) motion for judgment on the pleadings, the court will treat GuideOne's and Al Shanks's motions as if they had been submitted under Rule 12(c). *See Swearingen v. Honeywell, Inc.*, 189 F. Supp. 2d 1189, 1193 (D. Kan. 2002). The distinction between the two rules is purely one of procedural formality and the court employs the same standard that it uses to analyze a Rule 12(b)(6) motion to dismiss to evaluate a Rule 12(c) motion for judgment on the pleadings. *Id.* (citing *Ramirez v. Dep't of Corr.*, 222 F.3d 1238, 1240 (10th Cir. 2000)).

The court grants a motion to dismiss under Fed. R. Civ. P. 12(b)(6) only when the factual allegations fail to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although the factual allegations need not be detailed, the claims must set forth entitlement to relief "through more than labels, conclusions and a formulaic recitation of the elements of a cause of action." *In re Motor Fuel Temperature Sales Practices Litig.*, 534 F. Supp. 2d 1214, 1216 (D. Kan. 2008).  The allegations must contain facts sufficient to state a claim that is plausible—not merely conceivable. *Id.*  "All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true." *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).  The court construes any reasonable inferences from these facts in favor of the plaintiff.  *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006).

## III. Westport's Second Amended Complaint

### a. Lack of Objection

The operative complaint is Westport's second amended complaint (Doc. 79).  The court allowed Westport to file this complaint after: (1) Westport requested leave; (2) a magistrate judge recommended denying leave to add a contract claim (not addressed here) based on futility; and (3) this court declined to adopt the recommendation in part, allowing Westport to amend.  The equitable claims challenged in this motion were already included in Westport's first amended complaint.  Before finding that amendment would be futile, the magistrate judge found "no bad faith, dilatory motive, undue delay, undue prejudice, or that [Westport] failed to cure deficiencies with prior amendments." (Doc. 71 at 5.)  GuideOne did not object to the magistrate judge's "apparent finding of lack of any deficiencies" in the first amended complaint with respect to Westport's equitable claims.  (Doc, 96, at 3.) Because of GuideOne's failure to object, Westport argues that GuideOne waived review as to its equitable claims.

-3-

A party may contest a magistrate judge's report and recommendation by filing objections within 14 days of being served with a copy of the order.  28 U.S.C. § 636(b)(1)).  If a party fails to make timely objections to the magistrate's findings or recommendations, he or she waives appellate review of both factual and legal questions.  *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Okla.*, 73 F.3d 1057, 1059 (10th Cir. 1996).

Westport cites no authority that bars a defendant from filing a motion to dismiss under Rule 12(b)(6) because it did not object to the magistrate's recommendation on a different proposed claim. Regardless, the magistrate judge did not make a specific recommendation about Westport's equitable claims and the likelihood of success.  He simply stated that there were no deficiencies that Westport failed to cure in prior amendments.  This is not a recommendation on the merits, and it does not bar review here.

### b.  Equitable Subrogation

Because this is a diversity case, the district court applies substantive law from Kansas, the forum state.  *See Boyd Rosene & Assocs., Inc. v. Kan. Mun. Gas Agency*, 174 F.3d 1115, 1118 (10th Cir. 1999).  Under Kansas choice-of-law rules, the law where the insurance contracts were entered controls.  *U.S. Fid. & Guar. Co. v. Federated Rural Elec. Ins. Co.*, 286 F.3d 1216, 1218 (10th Cir. 2002) (citing *Safeco Ins. Co. of Am. v. Allen*, 941 P.2d 1365, 1372 (Kan. 1997)).  The Tenth Circuit also notes that state law determines whether a subrogee is entitled to recover for an entire loss.  *Garcia v. Hall*, 624 F.2d 150, 152 n.4 (10th Cir. 1980).  Here, Al Shank and the church entered into the insurance contract in Liberal, Kansas.

"Subrogation is founded on the principle that one cannot enrich himself by getting free of debt at the expense of another, not so fundamentally or primarily bound, by permitting him to pay the debt."

*U.S. Fid. & Guar. Co. v. Md. Cas. Co.*, 352 P.2d 70, 75 (Kan. 1960). There are two types of subrogation. Conventional subrogation—which is not applicable here—arises from the parties' agreement. The other type of subrogation is legal or equitable subrogation, and it is not dependent on any agreement, but instead is a creature of equity. *Hartford Fire Ins. Co. v. W. Fire Ins. Co.*, 597 P.2d 622, 629 (Kan. 1979). "The remedy is broad enough to include every instance in which one person, not a mere volunteer, pays a debt for which another is primarily liable and which in equity and good conscience should have been discharged by the latter." *Md. Cas. Co.*, 352 P.2d at 76 (citation omitted).

GuideOne cites five factors from a bankruptcy case, *In re Hartman*, 100 B.R. 46, 48 (D. Kan. 1989), but the Kansas Supreme Court has declined to give a detailed standard for equitable subrogation because "no rule can be laid down which will determine all cases." *Md. Cas. Co.*, 352 P.2d at 75. Instead, equitable subrogation rests within the court's discretion and is based on the facts and circumstances of each case. *Id.* at 75–76; *Nat'l City Mortg. Co. v. Ross*, 117 P.3d 880, 884 (Kan. Ct. App. 2005).

### The Parties' Arguments

GuideOne argues that an involuntary payment is the fundamental basis of equitable subrogation. GuideOne claims that Westport fails to show: (1) it involuntarily made payment to the church to protect its own interest; (2) it covered the church's entire loss; (3) it was more than a mere volunteer; and (4) Al Shank was not primarily liable for failing to correctly process the church's paperwork. According to GuideOne, it denied payment to the church because Al Shank did not follow the application procedures, which prevented the application from going through GuideOne's underwriting process.

Westport claims that it was compelled to cover the church's loss in accordance with *Gilbert* and that Al Shank was not at fault. It pleads that it made the church "whole" and responds that GuideOne will not be unduly prejudiced by submitting payment for the church's loss.

### Involuntary Payment

Westport argues that *Gilbert* controls this issue. In *Gilbert*, the plaintiffs paid for an insurance policy covering hospital expense on June 30, 1950. 241 P.2d at 770. The plaintiffs suffered an accident on July 1, 1950, that required hospitalization. *Id.* The insurance company's employee mistakenly stamped July 3, 1950, on the paperwork under the word "received" instead of the true date of June 30, 1950, and the underwriter also mistakenly made the "policy date" July 3, 1950, rather than the correct date of June 30, 1950. *Id.* at 771. The court reviewed the parties' intentions and determined that the plaintiffs were entitled to reformation of the policy to have it dated on June 30, 1950. *Id.* at 775. In doing so, the court recognized that internal conflicts between the soliciting agent and home or district office are not to be resolved to the detriment of an innocent insurance applicant. *Id.* at 774–75.

While the *Gilbert* court did not address a claim of equitable subrogation, the court did reform a contract for insurance coverage to match the dates the insured believed it was covered. *Gilbert* recognized that when there is a misunderstanding between a soliciting agent and insurance company in processing the paperwork, the innocent insured should not be the party who bears the loss. Relying on *Gilbert*, Westport paid the church, thereby relieving the church of the burden to engage in an insurance dispute with GuideOne. Westport has sufficiently alleged that this payment was involuntary.

### Payment in Full

Westport pleads that it made the church whole for its loss. (Doc. 79 at 2.) The court construes Westport's pleadings as true and in its favor and presumes that it paid the church's claim in full. *See Tal*, 453 F.3d at 1252.

### Mere Volunteer

The allegations in the complaint do not indicate that Westport was a "mere volunteer." *See Md. Cas. Co.*, 352 P.2d at 76 ("This court has recognized that a person secondarily liable who makes a payment for which subrogation is claimed for the protection of his own interest or in discharge of an existing liability is not to be regarded as a mere volunteer."). Westport was Al Shank's liability insurer and Al Shank was the insurance agency that sold the church the policy.

At this stage, it is not clear what happened with the application Al Shank submitted to GuideOne. But Westport alleges that Al Shank submitted the church's paperwork to GuideOne in the customary manner as their prior dealings and that GuideOne confirmed coverage by an email dated August 22, 2013 at 5:08 p.m. Al Shank was the agency responsible for communicating with and preparing the church's application for GuideOne. As in *Gilbert*, the mistake was internal between Al Shank and GuideOne. Westport claims that it paid for the church's loss because it was Al Shank's liability insurer. Westport's theory is that GuideOne's primary liability was discharged by its payment, thereby entitling Westport to an equitable remedy against GuideOne. Westport has made a plausible claim that it did not volunteer to cover the church's loss.

### Prejudice

Westport argues that GuideOne will be unjustly enriched—as opposed to unduly prejudiced—if it is allowed to avoid coverage for the church after it instructed Al Shank to bind coverage.

Subrogation will only be applied if it will not materially prejudice the holders of intervening interests. *Bankers Trust Co. v. United States*, 25 P.3d 877, 880 (Kan. Ct. App. 2001) (citation omitted).

Again, at this stage, Westport has stated sufficient facts that Al Shank and GuideOne had a course of dealing between them that involved Al Shank soliciting organizations for GuideOne to insure. Westport claims GuideOne authorized Al Shank to bind coverage for property losses incurred by the church, yet failed to pay on the claim. Westport also claims that Al Shank was not at fault. Therefore, the court finds that Westport has stated a plausible claim for equitable subrogation.

### c. Indemnity

Kansas recognizes an action for implied indemnity when one party, who is without fault, is compelled to pay for the tortious acts of another. *Nolde v. Hamm Asphalt, Inc.*, 202 F. Supp. 2d 1257, 1269 (D. Kan. 2002). Ultimately, Westport must prove (1) that it was compelled to pay an obligation that the purported indemnitor ought to have paid, but did not; (2) that it was without fault; and (3) the obligation arose from the tortious actions of the purported indemnitor. *Hartford Fire Ins. Co. v. P & H Cattle Co.*, No. CIV A. 05-2001-DJW, 2006 WL 2135189, at *4 (D. Kan. July 28, 2006) ("*Hartford Fire Ins. II*").

The court has already found that Westport adequately alleged that it was compelled to pay an obligation of GuideOne. Westport has also alleged that it was without fault. The remaining question is whether Westport has adequately alleged that the obligation arose from the tortious conduct of GuideOne. This question is a close one for the court, but the court determines that Westport has alleged (as an alternative theory) that GuideOne made a negligent misrepresentation when it purportedly authorized Al Shank to bind coverage. Kansas has adopted the tort of negligent misrepresentation, as defined in Restatement (Second) of Torts § 552 (1976). *Gerhardt v. Harris*, 934 P.2d 976, 984 (Kan. 1997) (citing *Mahler v. Keenan Real Estate, Inc.*, 876 P.2d 609, 616 (Kan. 1994)).

"Generally, § 552 includes negligent supply of commercial information to others for guidance in their business transactions." *Id.*  The duty is independent of the parties' contract and arises from the general tort duty to refrain from misrepresentation of material present or preexisting facts.  *Graphic Techs., Inc. v. Pitney Bowes Inc.,* 998 F. Supp. 1174, 1179 (D. Kan. 1998).

GuideOne's reliance on *Hartford Fire Ins. II* is misplaced, at least at this stage of the litigation. In *Hartford Fire Ins. II*, the court granted summary judgment because the plaintiff failed to show that its obligation arose in tort.  2006 WL 2135189, at *4.  Notably, however, at the Rule 12(b)(6) stage, the court found that the plaintiff had alleged sufficient facts to show implied indemnity to survive a motion to dismiss.  *Hartford Fire Ins. Co. v. P&H Holding Co.*, No. CIV A. 05-2001-DJW, 2005 WL 3576939, at *4 (D. Kan. Dec. 29, 2005) ("*Hartford Fire Ins. I*").  Likewise, Westport's allegations are sufficient here to avoid dismissal.

### d. Equitable Contribution

GuideOne claims that Westport's claims are insufficient to invoke the doctrine of equitable contribution because Westport has failed to plead that it and GuideOne insure the same interests. Equitable contribution is applicable in situations where the parties are equal under a common liability or burden.  *Great W. Cas. Co. v. Canal Ins. Co.*, 901 F.2d 1525, 1527 (10th Cir. 1990) (citing *Am. States Ins. Co. v. Hartford Acc. & Indem. Co.*, 545 P.2d 399, 407 (Kan. 1976).  Between insurers, it is generally a prerequisite to enforcing contribution that their policies insure the same interests.  *Id.*

Westport is Al Shank's liability insurer.  Westport claims that GuideOne is the church's property insurer.  These interests are separate and distinct, and contribution is not applicable.  While Al Shank was responsible for securing the church's paperwork on behalf of GuideOne, Westport does not allege that Al Shank was responsible for insuring the church in any way.  Westport has failed to state a claim for equitable contribution.

## IV. GuideOne's Third-Party Complaint

GuideOne—third-party plaintiff—entered into an Independent Agent Contract with Al Shank. GuideOne alleges that Al Shank breached the contract and its fiduciary duty when it failed to discharge its duties and obligations in accordance with the contract and law and that it was negligent in a number of ways. Although GuideOne denies liability to Westport under the second amended complaint, if liability exists, GuideOne seeks contractual indemnity from Al Shank.

Al Shank argues that the third-party complaint should be dismissed because it already, and involuntarily, discharged GuideOne's coverage obligations that should have been paid to the church. According to Al Shank, if Westport is successful and GuideOne reimburses Westport—but Al Shank is required to reimburse GuideOne for what is owed to Westport—then GuideOne will end up paying nothing to cover the loss.

Westport filed this action as assignee to the church and subrogee to Al Shank. "The basic idea of subrogation is that of substituting the insurance carrier for the insured in the insured's action against a third party." *U.S. Fire Ins. Co. v. Royal Ins. Co.*, 759 F.2d 306, 309 (3d Cir. 1985).

Here, GuideOne is attempting to join Al Shank, Westport's subrogor, through a third-party complaint. Any finding of responsibility on the part of Al Shank would not create a right of recovery in Westport, but rather would "merely serve to eliminate or reduce" Westport's right to recover from GuideOne. *Cf. USAA Cas. Ins. Co. v. Metro. Edison Co.*, No. 1:12-CV-1178, 2013 WL 2403309, at *2 (M.D. Pa. May 31, 2013). "The rights of the insurer against the wrongdoer cannot rise higher than the rights of the insured against such wrongdoer, since the insurer as subrogee, in contemplation of law, stands in the place of the insured and succeeds to whatever rights he may have in the matter. *Farmers Ins. Co. v. Farm Bureau Mut. Ins. Co.*, 608 P.2d 923, 928 (Kan. 1980). Therefore, any defense which

-10-

a wrongdoer has against the insured is good against the insurer subrogated to the rights of the insured. *Id.*

In the instant matter, Westport is not a third party to whom Al Shank could be primarily liable; rather, the relationship between Al Shank and Westport is that of subrogor and subrogee. Under Kansas law, a subrogee steps into the shoes of the subrogor for purposes of asserting the subrogor's rights against a defendant. *See Hartford Fire Ins. Co.*, 597 P.2d at 628. Thus, Westport's action proceeds, with respect to any claims or defenses, as if Al Shank was suing GuideOne in its own capacity. Any affirmative defense that GuideOne has arising out of Al Shank's conduct must be asserted against Wesport, not Al Shank. Therefore, GuideOne's third-party complaint is duplicative and fails to state an independent claim against Al Shank.

**IT IS THEREFORE ORDERED** that GuideOne's Motion for Partial Dismissal (Doc. 91) is granted with respect to Westport's claim of contribution. GuideOne's motion is denied as to Westport's claims of equitable subrogation and implied indemnity.

**IT IS FURTHER ORDERED** that Al Shank's Motion to Dismiss (Doc. 93) is granted. GuideOne's third-party complaint against Al Shank is dismissed.

Dated this 12th day of January, 2017, at Kansas City, Kansas.

                                              **s/ Carlos Murguia**
                                              **CARLOS MURGUIA**
                                              **United States District Judge**