**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| WESTPORT INSURANCE CORPORATION, ) ) ) Plaintiff ) ) v. ) ) GUIDEONE MUTUAL INSURANCE COMPANY, ) ) ) Defendant. ) ) | Case No. 15-2001-CM |

## MEMORANDUM AND ORDER

Plaintiff Westport Insurance Company ("Westport") brings this action to recover a payment from defendant GuideOne Mutual Insurance Company ("GuideOne") that Westport made to Grace Evangelical Lutheran Church ("Grace Evangelical") on behalf of third-party defendants Al Shank Insurance ("Shank Insurance"), Al Shank ("Shank"), and Sandra Edgerly. Shank Insurance is an agency that issued insurance policies written by GuideOne to various religious institutions. Grace Evangelical suffered a water damage loss in early 2014, and submitted a claim to GuideOne. But GuideOne denied Grace Evangelical's claim, stating that no policy was issued because its application procedures were not followed. Westport—liability carrier for Shank Insurance—paid the water loss to the church, allegedly pursuant to *Gilbert v. Mutual Benefit Health & Accident Ass'n*, 241 P.2d 768 (Kan. 1952). Westport then filed this action as assignee to Grace Evangelical and subrogee to Shank Insurance. Westport seeks reimbursement from GuideOne for Westport's payment of around $165,000 to Grace Evangelical.

-1-

Westport filed a motion for partial summary judgment on liability (Doc. 154). GuideOne filed a motion for summary judgment on all claims (Doc. 157). For the following reasons, the court grants GuideOne's motion and denies Westport's.

## I. Legal Standards

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The court takes up GuideOne's motion first, so Westport receives the benefit of having the evidence viewed in the light most favorable to it.

## II. Factual Background

GuideOne, Shank Insurance, and Shank were parties to an Independent Agent Contract ("IAC"). Under that contract, Shank Insurance and Shank were independent contractors—not employees of GuideOne. Grace Evangelical is a client of Shank Insurance, and Westport is Shank Insurance's liability insurer.

Under the IAC, Shank Insurance and Shank have the authority to bind, issue, and deliver insurance contracts for GuideOne, subject to restrictions outlined in GuideOne's manuals and underwriting rules. Any money that Shank Insurance collects on behalf of GuideOne must be promptly transmitted to GuideOne, along with all applications. GuideOne's Commercial Lines Underwriting Guidelines require that:

> [a]ll bound applications must be submitted to the Home Office within ten (10) business days of the binding effective date. All supporting materials (cost guides, diagrams, photos) required by the Commercial Underwriting Department must accompany the

-2-

application. The prior three-year loss history must be submitted within 30 days after binding coverage.

For a full submission, GuideOne requires the following:

- Fully completed application signed by the applicant;

- Cost guide for each building;

- Photos of each building;

- Commercial policy rate quote sheet, if applicable;

- Prior three-year loss history; and

- Down payment of at least a quarter of the annual premium.

Shank's normal practice in 2013 was to submit what he could electronically, fax additional information, and send the premium payment within seven to ten days. Ordinarily, GuideOne responded by posting the policy online within two or three weeks and sending Shank an email alerting him that the policy was available.

In May 2013, Sandra Edgerly (Shank Insurance's employee and one of the defendants in this case) asked Leslie Bingham, an underwriter for GuideOne, to review an insurance quote she had prepared for Grace Evangelical. After that date, Edgerly's next communication with GuideOne was in August, prior to Grace Evangelical's renewal date. (Grace Evangelical was already one of Shank Insurance's clients, but did not have insurance through GuideOne at the time.) On August 22, Edgerly spoke with Eric Pike, a senior underwriter for GuideOne, and sent him a confirmation email stating that she had bound coverage for Grace Evangelical effective August 19, 2013 "for the above property, gl, crime, business auto and workers compensation." An insurance binder is a form that includes the name of the insured, the name of the insurance company, the effective date of the binder, and its expiration date. But Edgerly did not prepare a binder form or send one to GuideOne for Grace

Evangelical as part of the process in August 2013. Edgerly explained that this was because Grace Evangelical was not a new client for Shank Insurance.

For new commercial line customers, GuideOne has an online document for its submission process. The document specifies that materials should be submitted by email or by fax. Edgerly does not know if she submitted Grace Evangelical's materials in either fashion. The document also states that bound submissions are due in GuideOne's home office within ten days of binding. And the agent is to collect a premium downpayment and send it in with the submission. Shank Insurance collected a premium from Grace Evangelical, but it never sent the premium to GuideOne.

Edgerly placed the Grace Evangelical application in a basket for mailing. She did not, however, know if she addressed the envelope or if someone else did. GuideOne has no record of receiving the application. The application that Edgerly believes she placed in a basket to be mailed contained a number of omissions of information that was required by GuideOne. The court will not repeat them all here, but there were several deficiencies that would have required further investigation before the application could have been approved.

On November 8, 2013, Edgerly emailed Kheila Irvin at GuideOne. In the email, Edgerly advised that Grace Evangelical's daycare operation coverage should be deleted. Three days later, Ms. Irvin responded, directing Edgerly to send the endorsement request to "commercial@guideone.com" and add a policy number to the subject line. Edgerly did not have a policy number for Grace Evangelical, so she did not send the request.

On November 14, 2013, Ms. Irvin told Edgerly that she could not confirm that GuideOne had received the Grace Evangelical application. She requested that Edgerly resubmit the application. Edgerly then copied the same application and put it in the basket to be sent out. Again, she did not

include the premium payment. Edgerly does not recall following up with anyone at GuideOne regarding the resubmission.

As of February 3, 2014, Edgerly had not heard back from GuideOne or received a policy or policy number on Grace Evangelical's application. On February 9, 2014, Edgerly received notice of Grace Evangelical's property damage loss. Three days later, Shank Insurance submitted a General Liability Notice of Occurrence/Claim to Westport. Shank Insurance described the occurrence in this manner: "Underwriting procedures were not followed through by agent/csr, confirmation of binder was not made and policies were not issued by insurance company." The abbreviation "csr" referred to Edgerly. GuideOne never issued an insurance policy for Grace Evangelical.

## III. Discussion

The parties each take a distinct position that they believe determines the outcome of this case. GuideOne argues that the negligence of Shank Insurance (through its employee Edgerly) is dispositive of all of Westport's claims. Because of that negligence, Shank Insurance could not recover and therefore Westport, as subrogee, cannot recover. Westport, on the other hand, argues that GuideOne has not shown it would have rejected Grace Evangelical's insurance application—as it must show under Kansas law. According to Westport, *Hays v. Farm Bureau Mutual Insurance Co.*, 589 P.2d 570 (1979), entitles Westport to judgment because GuideOne cannot show causation—i.e., that any negligence on the part of Shanks Insurance caused a loss—because GuideOne would have insured Grace Evangelical had procedures been followed.

### A. Contractual Indemnity

Westport's first claim is a claim for contractual indemnity. The parties disagree over whether Iowa law or Kansas law applies to this claim. In the pretrial order, the parties stipulated that Iowa law applies to the contract claim. But Westport now argues that Kansas law applies because the question is

-5-

whether GuideOne owed a duty to pay Grace Evangelical. In making this argument, Westport is improperly placing Grace Evangelical at the center of the dispute. The relevant question is whether GuideOne has a contractual duty to indemnify Shank Insurance (and therefore Westport). The answer to this question is governed by the contract between GuideOne and Shank Insurance, which provides that Iowa law governs. It is the relationship between GuideOne and Shank Insurance that forms the basis of the contract claim—not the relationship between GuideOne and Grace Evangelical. In fact, there is no contractual relationship between GuideOne and Grace Evangelical, as the uncontroverted facts show that GuideOne never issued an insurance policy to Grace Evangelical.

Under Iowa law, a party may not be indemnified for its own negligence without express contractual language. *McNally & Nimergood v. Neumann-Kiewit Constructors, Inc.*, 648 N.W.2d 564, 571–72 (Iowa 2002). And Iowa does not require GuideOne to prove that it would not have issued an insurance policy to Grace Evangelical. *Israel v. Farmers Mut. Ins. Ass'n of Iowa*, 339 N.W.2d 143, 148 (Iowa 1983). In any event, the uncontroverted facts show that GuideOne would not have approved the application as-is. Rather, GuideOne would have required substantial clarification or additional information before it could determine the price at which it would have insured Grace Evangelical. Grace Evangelical also would have had to be willing to pay for the insurance at that price point. Based on these unknowns, the court cannot assume that GuideOne would have become Grace Evangelical's insurance provider. The fact that GuideOne eventually approved all 316 bound applications for insurance coverage for churches in Kansas during 2013 and 2014 does not require the court to apply such an assumption.

The uncontroverted evidence further shows that Shank Insurance failed to submit a bound application to GuideOne. This failure demonstrates that the fault lies with Shank Insurance—not GuideOne. Merely placing the application in a basket for mailing was insufficient to transmit the

application to GuideOne. Edgerly's action was not in accordance with the procedures that Shank himself normally followed, or those published in GuideOne's online document. In addition, Shank Insurance never transmitted the premium to GuideOne. And when notified that GuideOne had no policy number for Grace Evangelical, Edgerly merely repeated the same action again instead of taking care to ensure that the application did, in fact, reach GuideOne the second time.

The uncontroverted facts show that, as a matter of law, the actions of Shank Insurance were negligent. Westport does not argue that Shank Insurance's actions were reasonable; rather, Westport argues that the actions of Shank Insurance are irrelevant because the only pertinent question is whether Grace Evangelical was an acceptable risk for GuideOne. The court, however, rejects this position based on Iowa law, and therefore considers the negligence of Shank Insurance.

Iowa does not permit indemnification for a party's own negligence absent express contractual language. No such contractual language exists here. The court therefore grants summary judgment for GuideOne on Westport's contractual indemnity claim.

### B.     Equitable Claims

Unlike the contractual indemnity claim, Kansas law applies to Westport's equitable claims. Westport addresses all of its equitable claims together, arguing again that *Hays* requires judgment in its favor because GuideOne has not shown that Grace Evangelical was a risk that GuideOne would not have insured.

#### 1.      Equitable Subrogation

"Subrogation is founded on the principle that one cannot enrich himself by getting free of debt at the expense of another, not so fundamentally or primarily bound, by permitting him to pay the debt." *U.S. Fid. & Guar. Co. v. Md. Cas. Co.*, 352 P.2d 70, 75 (Kan. 1960). There are two types of subrogation. Conventional subrogation—which is not applicable here—arises from the parties'

agreement. The other type of subrogation is legal or equitable subrogation, and it is not dependent on any agreement, but instead is a creature of equity. *Hartford Fire Ins. Co. v. W. Fire Ins. Co.*, 597 P.2d 622, 629 (Kan. 1979). "The remedy is broad enough to include every instance in which one person, not a mere volunteer, pays a debt for which another is primarily liable and which in equity and good conscience should have been discharged by the latter." *U.S. Fid. & Guar. Co.*, 352 P.2d at 76 (citation omitted). Equitable subrogation rests within the court's discretion and is based on the facts and circumstances of each case. *Id.* at 75–76; *Nat'l City Mortg. Co. v. Ross*, 117 P.3d 880, 884 (Kan. Ct. App. 2005).

The problem with Westport's equitable subrogation claim is the fact that subrogation cannot save a party from its own negligence. *Bankers Trust Co. v. United States of Am.*, 25 P.3d 877, 881 (Kan. Ct. App. 2001). Once again, *Hays* does not alter this result. In *Hays*, the court said:

> When a claim is made by an insurance company against its agent for the agent's failure to forward an application for insurance to the company it must be proven that the agent's conduct was the proximate cause of the company's loss. Where it is not shown an application for such insurance if submitted would have been rejected, thereby avoiding any obligation on the insurance claim, the company is not entitled to indemnity from the agent. In such case the agent's failure to forward the application to the company is not the proximate cause of the company's loss.

589 P.3d at 582. Westport claims that this language requires GuideOne to show that it would have rejected Grace Evangelical's application. But the instant case differs from *Hays* in a number of ways:

- *Hays* involved a contract suit filed by a customer against an insurance company. Here, Grace Evangelical did not sue GuideOne.
- *Hays* was based on a binding application for insurance. No such bound application exists here.
- In *Hays*, a jury found against two insurance companies and the insurance agent based on the binder. Again, here, there was no binder or a jury verdict against GuideOne.

- In *Hays*, the insurance companies had existing insurance contracts with the customer. Here, Grace Evangelical did not have a prior relationship with GuideOne (although it did have one with Shank Insurance).
- The *Hays* court did not discuss any defects in the insurance application, but here, there are a number of defects that would have to be remedied before insurance would be issued.
- The insurance company in *Hays* did not produce evidence that it would have rejected the insurance application. Here, GuideOne has produced such evidence.
- The burden of proof in *Hays* was on the insurance company. In this case, the burden falls on Westport.

Based on these differences, the court determines that *Hays* does not control the outcome of this case.

Westport also relies on *Gilbert v. Mutual Benefit Health & Accident Ass'n*, 241 P.2d 768 (Kan. 1952). *Gilbert* is no more persuasive than *Hays*. In *Gilbert*, the question was whether equity permitted reformation of the date an insurance policy took effect. An insurance policy was in place; the date on which it took effect was just incorrect. The instant case does not involve policy reformation. Rather, to offer Westport equitable relief, this case would require creation of a policy from an application that was incomplete and never properly submitted.

The uncontroverted facts demonstrate that Shank Insurance failed to follow proper procedures to submit Grace Evangelical's application, and that GuideOne never received it. Under these circumstances, it would be inequitable to hold GuideOne responsible for paying on a policy that did not exist. Westport paid Grace Evangelical because Westport insured Shank Insurance and Shank Insurance represented to Westport that "Underwriting procedures were not followed through by agent/csr, confirmation of binder was not made and policies were not issued by insurance company." This is not a situation where equitable subrogation is a fitting remedy.

### 2. **Equitable Indemnity**

Kansas recognizes an action for implied indemnity when one party, who is without fault, is compelled to pay for the tortious acts of another. *Nolde v. Hamm Asphalt, Inc.*, 202 F. Supp. 2d 1257, 1269 (D. Kan. 2002). To prevail on this claim, Westport must prove (1) that it was compelled to pay an obligation that the purported indemnitor ought to have paid, but did not; (2) that it was without fault; and (3) the obligation arose from the tortious actions of the purported indemnitor. *Hartford Fire Ins. Co. v. P & H Cattle Co.*, No. CIV A. 05-2001-DJW, 2006 WL 2135189, at *4 (D. Kan. July 28, 2006).

There are two problems with this claim. First, it must arise from a tort. Here, the claim arises from a contract. Second, Westport cannot show that GuideOne had any fault, for all of the reasons previously stated in this Memorandum and Order. Westport's claim for equitable indemnity also fails.

**IT IS THEREFORE ORDERED** that GuideOne's Motion for Summary Judgment (Doc. 157) is granted.

**IT IS FURTHER ORDERED** that Westport's Motion for Partial Summary Judgment (Doc. 154) is denied.

The case is closed.

Dated this 31st day of August, 2017, at Kansas City, Kansas.

> **s/ Carlos Murguia**
> **CARLOS MURGUIA**
> **United States District Judge**